## Simen Aziz *vs.* Atlantic Cotton Mills.

Essex. March 17, 1905. — September 11, 1905.

Present: Knowlton, C. J., Morton, Lathrop, Barker, & Hammond, JJ.

*Negligence,* Employer's liability.

If a Syrian boy nineteen years of age, speaking no English and never having worked on a machine, is set at work in a cotton mill, to put laps of cotton on at the feed end of a picker machine and after the cotton has passed through to take the laps off at the other end, there being no danger in this, and if he chooses to do more and attempts to clear the picker machine when it is clogged, and his hand and arm are cut by knives so that they have to be amputated, he cannot recover from his employer for the injuries thus caused by his doing in excess of his instructions an act which was no part of his duty.

Lathrop, J. This is an action at common law for personal injuries sustained by the plaintiff while in the employ of the defendant. At the trial in the Superior Court, at the close of the plaintiff's evidence, the judge directed a verdict for the defendant, and the case is before us on the plaintiff's exceptions.

The plaintiff is a Syrian and came to this country five or six months before the accident complained of. He went to work for the defendant on the second or third day after his arrival. At the time of the accident, June 12, 1902, he was about nineteen years old and could not speak English. The only evidence as to the accident came from the plaintiff, and was given through an interpreter. He was first employed as a roving boy, and his duties consisted in carrying roving from one set of machines in one part of the mill to another set of machines in another part. For about two months preceding the accident, in addition to his duties as roving boy, he swept the floor and cleaned around certain machines, but not around the machine on which he was injured. He never had worked on any machine in the mills of the defendant before the day of the accident, nor on any machine anywhere, and before he came to this country he had worked on a farm in Syria. On the day of the accident he was directed by the second hand to go to work on four machines which are known as Kitson two beater breaker lappers,

and he was instructed to put the laps of cotton on at the feed end and after the cotton had passsed through the machine to take the laps off at the other end, and this was all the instruction or direction that he received. He worked on these machines during the morning and returned to work in the afternoon at one o'clock, and he had not started or stopped the machine during the morning or when he returned to work in the afternoon. About half past one o'clock on this same day, the first the plaintiff ever had worked on these machines, one of the machines was stopped by the clogging of cotton in a beater box, and while the driving belt was running from the machine to the main shafting. When the machine stopped the plaintiff lifted the cover of the second beater box about three or four inches and saw that there was a considerable amount of cotton there, and he put his right hand in to take hold of the cotton, when the machine started and his hand and arm were struck by the beaters and torn and lacerated so that it was necessary to amputate the arm above the elbow.

The plaintiff further testified on cross-examination that he himself knew that the picker picked the cotton and made it into a lap; that he never had seen the cover of the beater raised by anybody; that he raised the cover four or five inches by taking hold of the handle on the side, and that he never saw anybody take hold of the handle before; that he saw the belts on the machine and knew that they ran to pulleys or wheels and that the wheels turned around very fast; that he knew that a belt ran over a revolving pulley at one end and over a small pulley that was fastened to a shaft running through the beater box, and that the shaft was turning around; that he would not have put his hand into the box if he had thought that the machine had been running; that he never had been told to raise the cover; that he knew that there was a noise in the machine when it was in motion and that, just at the point where the cotton went into the box there were two rollers through which the cotton passed; that he saw the ends of the rollers on the outside of the box and from that fact knew that the rollers went through the box; that the bottom of the cover came down very close to the cotton and that he knew his hand would not get under unless he raised the cover; that when the cover was raised and the machine was

still, the knives could be seen; that the knives were something like a comb, and that there were two of them.

A witness who was called as an expert by the plaintiff testified that it would not be safe to remove clogged cotton with the belt on the shaft which turned the beater; that it would be dangerous. Upon cross-examination the witness testified that the cover of the beater box was made of sheet iron and was quite heavy; that it was quite a weight to push up and required strength to do it; that when the knives in the beater are revolving and the pulley and the shafting to which the knives are fastened are turning, they can be seen by anybody who stands beside the beater; that if one found the cotton closed up in the beater, he could know whether the knives were going around by seeing whether the pulley was turning; that the turning of the pulley would indicate that the knives were revolving in the beater, and that when they were revolving they make quite a noise; that when they are revolving rapidly the knives are not visible and that when any person raises the cover and cannot see the knives, that indicates that there is danger; that it would be impossible for anybody to get his hand into the beater unless he raised the cover and put it in; that if any one raised the cover four or five inches there would be no difficulty in seeing the knives if they were still.

We are of opinion on the evidence in this case that the ruling was right. The plaintiff was set to work "to put the laps of cotton on at the feed end, and, after the cotton had passed through the machine, to take the laps off at the other end." There was no danger in this. He chose to go beyond this and to attempt to clear the picker machine when it was clogged. This was no part of his duty, and he exceeded his instructions. The case falls within *De Souza* v. *Stafford Mills*, 155 Mass. 476. See also *Downey* v. *Sawyer*, 157 Mass. 418; *Robinska* v. *Lyman Mills*, 174 Mass. 432; *Chmiel* v. *Thorndike Co.* 182 Mass. 112.

*Exceptions overruled.*

*J. G. Walsh*, for the plaintiff.
*J. P. Sweeney*, for the defendant.