ROBERT GRACE *vs.* UNITED SOCIETY CALLED SHAKERS.

Berkshire. September 14, 1909. — October 20, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Agency*, Existence of relation. *Negligence*, Employer's liability.

Where, at the trial of an action by an employee against his employer to recover for personal injuries alleged to have been received by the plaintiff in the course of his employment, one issue is whether or not the plaintiff rightly left work that he had been doing and began another kind of work, at which he was injured, the determination of which issue depends upon whether one M., who directed the plaintiff's change of work, had authority so to do, and the plaintiff and another employee of the defendant testify without objection by the defendant that M. "had charge of these men [one of whom was the plaintiff]," and that he was "foreman for the" defendant "and gave" the witness "orders

to go to work," and the defendant introduces no evidence on the question and shows no reason for an entire absence on his part of testimony regarding the matter, the jury are warranted in finding that M. had authority to change the plaintiff's work.

Negligence of a fellow servant in failing to instruct or warn an employee as to danger attending his work does not bar recovery by the employee from the employer for injuries resulting from such danger, since the duty to instruct and warn is the employer's, and he cannot free himself of that duty by delegating it.

At the trial of an action by a boy not quite fifteen years of age against his employer for injuries received while working upon a planing machine, it appeared that for two weeks the plaintiff had been employed by the defendant at splitting wood, that a few minutes before he was injured he was directed to assist the operator of a planing machine, into which boards were thrust for planing over two infeed rollers upon revolving knives and out over an outfeed roller. There was evidence, which was controverted, tending to show that the plaintiff was a rather dull boy, that, although he knew that there were knives in the machine, he did not know their precise location, that the knives were dull and that a dull knife retards the progress of the board, that, while the machine was in operation, the shavings and dust flying from it obscured his view of it and he could not see where the knives were, that the operator of the machine told him to go around back of the machine and "pull out the boards," but gave him no other instructions and no warning, that some of the boards stuck and the outfeed roller ceased revolving, whereupon the plaintiff pulled on the board with one hand and attempted with the other to cause the outfeed roller to revolve, in doing which he placed his hand upon the revolving knives, which were just beyond the outfeed roller, and was injured. *Held,* that it could not be ruled as matter of law either that the act of the plaintiff in trying to start the outfeed roller with his hand was outside of the work which he was set to do, or that the act was one which the defendant had no reason to expect of the plaintiff or was not one against the danger of which it was the defendant's duty to warn the plaintiff; and that the questions of the due care of the plaintiff and of the negligence of the defendant were for the jury.

TORT for personal injuries received by the plaintiff, a boy less than fifteen years of age, while employed by the defendant and assisting in the operation of a machine called a "cylinder planer," as stated in the opinion. Writ in the Superior Court dated May 28, 1908.

The declaration was in three counts, all at common law, the negligence of the defendant alleged in the first count being the furnishing of dangerous, improper and defective machinery and implements for the plaintiff to work with, that in the second count being the placing of the plaintiff in an unsafe place to work, and that in the third count being a failure to warn and instruct the plaintiff as to dangers attending his work.

The case was tried before *Crosby*, J. The facts are stated in the opinion. At the close of the evidence the presiding judge

ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*P. J. Moore*, for the plaintiff.

*C. E. Burke*, (*H. L. Dawes* with him,) for the defendant.

HAMMOND, J. When the plaintiff first entered the employ of the defendant he was set to work splitting wood, and he continued at that work up to the day of the accident, a period of two weeks. One Volin, called by the plaintiff, testified that he, Volin, had been working nearly ten years for the defendant; that on the day of the accident he was ordered by one McDermott to plane some boards upon the planing machine; that he needed some one to help him, and that McDermott in reply to his request for help told him to get the plaintiff; and that he did so. One of the contentions of the defendant is that there is no evidence that McDermott had authority from the defendant to make this change in the plaintiff's work.

Upon this point Volin testified without objection that McDermott was the foreman for the defendant and had "charge of the men there." The plaintiff testified also without objection that "McDermott, foreman for the . . . [defendant] . . . gave him orders to go to work while . . . [he] worked there."

Several witnesses were called by the defendant, but no evidence was introduced by it as to the agency of McDermott and no reason shown for this entire absence of testimony on the part of the defendant on this point. Upon the evidence in behalf of the plaintiff, taken in connection with the entire absence on the part of the defendant, in a matter within the knowledge of the defendant, it is clear that the jury would have been warranted in finding that the act of McDermott in directing that the plaintiff should go and help Volin on the planing machine was the act of the defendant.

It is further contended by the defendant that the neglect of McDermott or Volin (if any there was) to instruct the plaintiff, was the neglect of a fellow servant. But this is untenable. The defendant having through McDermott set the plaintiff at work on the machine, was bound to give him suitable instructions. This is a duty from which it could not free itself by delegation to any one else. It is answerable for the failure to have that duty performed, whether and to whomsoever it may be delegated.

It is also urged by the defendant that in any event the plaintiff was sufficiently instructed in the work he was set to do; and that his injury was not due to any lack of instructions for that work, but to the fact that he voluntarily went outside that work and thereby incurred hazards by a course of action which the defendant had no reasonable cause to apprehend and against which, therefore, there was no duty on the part of the defendant to warn him.

It becomes necessary to determine what the order to the plaintiff was and what under the circumstances it fairly may be held to mean. The machine is what is called a " cylinder planer." It has a wooden table about eight feet long and thirty inches wide, standing twenty-nine inches above the floor. Upon this table are two fluted infeed rolls, one outfeed roll and a set of revolving planing knives, which latter are attached to a drum situated between the second infeed roll and the outfeed roll. These knives project about one fourth of an inch above the. drum, and when revolving come within an inch of the outfeed roll. All the rolls, both infeed and outfeed, revolve very slowly. Over the knives is a " circular hood " enclosing them and extending back over and beyond them as far as the outfeed roll. This roll is about three inches in diameter. There is a space between it and the top of the hood " about five inches high and twenty-two inches long, where the knives can be seen and where the shavings and dust are blowing out of the planer in front of where the helper is supposed to stand." Beyond or in the rear of the outfeed roll is a leaf or apron about two feet long and of the width of the table. " The helper stands back of this leaf at any convenient place not further away from the knives than the length of the board, and takes hold of the board and removes it from the machine." The board to be planed is placed at one end of the table, called the front or operator's end, and is moved to the first infeed roll, by which it is caught and moved to the second infeed roll, and then it is passed to and under the knives and to the outfeed roll and so on out at the rear of the machine. The action of the machine is described by the witness Volin in the following language: " The board is put in at the front end of machine and is gripped by corrugated rollers. Rollers are belt driven. These two corrugated rollers grip the board so they

make an impression and hold it and force it against the knife, then the machine turns the board through until the other end of the board reaches the corrugated rollers. Then the ordinary method of driving the board through from that point is to put another board right against it and shove it through. The board behind is then caught by these rollers and pushes the first board through. As long as the original board is held by these rollers nobody can pull the board through from the other end, while the gears are in. Until the board passes this point it is impossible to pull it out of the other end of the machine."

This is the machine at which, a few minutes before he was hurt, the plaintiff being then not quite fifteen years of age, was called to work. He had had no experience in this kind of work, and there is no evidence that the defendant ever supposed or had any reason to suppose otherwise.

What was he told to do and what instruction did he receive? Upon this the evidence may be summarized as follows. Volin above mentioned testified on direct examination thus: "The first thing I did when I got to the planer I dropped it about two inches down with the crank to get an inch board into it. I was to take enough off the board to make it smooth. The board was an inch thick. I was to take off about one eighth off the board. When I got the machine regulated for work I told the boy to go right back there and take the board when it came out and I went to the machine on the other side. I went back of the planer to help the boy twice to take the boards out of the machine; I did not help him but twice to pull the boards out, but I hollered at him four times to keep back from the machine. The trouble was that the boards got stopped up and I went back to help him pull the boards out. I did it a couple of times. The boards did not often stop. One board got stuck first, and after a little while another one stuck. . . . I should say that I ran fourteen or fifteen boards through the machine before the boy got hurt. I think the boy was at the machine ten or fifteen minutes before he got hurt. I told him to keep back and take the board when it came out. The boards were eight and ten and twelve feet long, and one inch thick."

Upon cross-examination he further testified: "The usual position of the helper on this kind of machine is five or six

feet back of it. There is no necessity for his coming close to the machine under any circumstances. Here is the board that was in the machine when the boy got hurt. This board shows that it had been planed on one part but not on the other. About nine feet six inches has been planed and two feet three inches not planed. In that position, and in the machine, anybody could not pull the board out when the gears were in mesh. The boy saw the planer. He was right by me and seen the knife and the whole business. He stood right behind me and could see the knife. He saw the machinery start and I told him to go back and stay there and take the board when it came out. I never told him at any time to go near the planer. I told him to keep back four times. . . . I told him where to stand. I pointed a finger like that to keep back about seven or eight feet. I was right by the machine and told him to stand there and take the board when it came out. I told the boy to stand back of the machine. I think about seven or eight feet away from it. . . . When I sent a board through this machine as it goes past the end of the board another board is placed behind it and the roller engaged that board and pushed the other board right through. If a board that was thinner was put in it might not go through. If one board is a little mite thicker in the middle than another, it might stop, and go and wiggle it a little it might start along. If you get a board sawed straight an inch thick it usually goes right along."

On re-direct examination he testified as follows: " He had on buckskin mittens when his hand was caught in the machine. It knocked the belt off and stopped the machine. The infeed rollers will feed it out but it will stop sometimes when it gets to the outfeed roller. The outfeed roller, when there is nothing behind it, will not always push the board out. There is no roller which will shove the board out after it passes the infeed roller. The knife revolves against the board, while the board is travelling out the knife revolves against it and planes it smooth. The knife has a tendency to shove the board back toward the front and sometimes stops and sometimes goes along, you put another board behind it and it will shove it along. Back of the machine is a safe place to stand if you keep your hands away from the machinery. It is not as easy for a boy to get a good

grip on the board standing up to the machine as it is standing back."

The plaintiff testified that while he was splitting wood Volin came to him and said that McDermott told him (Volin) to get the plaintiff to help him plane boards, and that he went to the machine ; that at first he helped Volin saw off the rough edges of some boards, and then waited until Volin gauged the rolls for the boards and started the machine ; that he [the plaintiff] " stood right beside the saw of another machine and never saw the back of the planing machine while it was at rest, never was acquainted with the planing machine at all"; that Volin requested him to go around to the back end of the machine and pull out the boards; that Volin never told him about the machine, never told him where to stand, but simply told him to go back of the machine and pull out the boards; that Volin never told him how to pull out the boards nor warned nor instructed him how to do the work; that when a board was put into the machine it moved out until it got to a certain place and then it stopped and that then he had to " tug on" it and pull it out. He further testified as follows : " I couldn't pull some of them out myself. Volin came around to help me pull them out several times. He was all the time scolding and hollering when I could not pull the boards out. Couldn't see anything in the machine, it was going around so fast you couldn't notice what it was : I did not know what was revolving in the machine. Shavings just came out of the hood and up in my face, over my head. I knew the shavings came in my face, that obstructed my view and prevented me from seeing what was back there in the machine. He never told me to look out for the machine. The last board upon which I got hurt, I did not notice how it acted when it came out of the machine, but it stopped after it got past the creased rolls and I know the back roll stopped. In trying to pull the last board out I caught hold of the board with my left hand and went to turn the outfeed roll with my right, and put it on the roll, and it went right in between the roller and the knives, and my hand was cut off at the knuckles and stopped the machine. I had a mit on at the time. Did not know there was knives back there in the planer. Didn't know hand would be injured by placing it on the back roll. Didn't know how many boards

I pulled out of the planer.  Perhaps one half dozen, probably more.  Volin helped me to pull out four or five."

On cross-examination he testified as follows : " When taking the boards out of the machine [I] stood back a good ways from the machine sometimes, but most generally I stood close to the machine.  It wasn't easier to handle boards away from the machine than close to it.  Probably it was just as handy.  I stood at a distance from the machine about one third of the time.  Never told Peter or Riacho that I was to blame for the injury done to my hand.  Never told them that I got too near the machine and was hurt.  Never been around where the planer and saw were.  Was around to help saw wood in the little shop by the building.  Didn't know there was any knives in the planer.  You couldn't notice what was in there with the shavings coming out.  Looked as though it was a round cylinder.  Thought the shavings were taken off the boards further back than the back roll.  Never thought knives were so close to the roll.  Thought there was knives in there but thought they were further back.  Didn't know there was any knives in there until after I got my hand caught.  Didn't know that was taking shavings off the board.  Supposed some sharp instrument was doing it.  Knew there was knives or some cutting instrument in the machine to take the shavings off."

On re-direct examination he further testified : " Didn't know that when I put my hand on that roll that the knives would come in contact with it.  There was nothing before the machine, cloth or anything, to prevent the shavings from flying in my face."

There was also evidence that the knives were dull and that a dull knife retards the progress of the board, and that the shavings, as they were being thrown out by the machine when in motion, obstruct the view of the knives, the language of one witness, called by the plaintiff as an expert, being that the shavings would " have the effect to obscure the view of the machinery " ; and that of another witness that " when the machine was working and throwing shavings you could not see knives."  The expert witness above mentioned further testified as follows : " If a board is put in the machine and run through, the infeed rolls will not carry a board all the way through.  They will carry a

board until it goes past the infeed rolls. In my judgment the outfeed rolls in this kind of a machine will not throw the board out. The dull knife retards the progress of the board. If the knives are sharp they will cut so much easier and have more leverage to carry the board out."

There was evidence that the back roll had stopped at the time the plaintiff's hand touched it. The plaintiff testified that it had stopped and that he went to turn it with his right hand while holding the board with his left hand. The expert testified that " it is possible when the board gets stuck, for the back roll to stop." It is certain that even if the back roll had stopped the knives were still revolving. The machine and the board which the plaintiff was trying to pull out at the time he was hurt were before the jury. There was evidence that the plaintiff was rather a dull boy.

The case is not free from difficulty upon the questions of due care of the plaintiff and negligence of the defendant. As is not uncommon in this class of cases, the evidence was conflicting. The jury, however, may have supposed that they had an honest and truth-telling boy before them, and they would have been warranted in finding that the plaintiff supposed and was justified in supposing that the order to go behind the machine and pull out the boards imposed upon him the duty not only to pull out a board when free, but if there was any apparent obstruction to its progress to try to get out the board by removing the obstruction; that the board upon which he was at work " stuck"; that the outfeed roll had stopped; that the plaintiff thought, and in view of his inexperience was not negligent in thinking, that he could start the feed roll and in that way get the board out; that although he knew that there were knives somewhere in the machine he was not instructed where they were, and by reason of the shavings and dust he had not seen them; that he had received no warning that the situation of the knives was such that in pulling through a free board or in trying to start the feed roll seemingly interfering with the progress of a board which had " stuck," he would come in contact with them, especially as the roll had stopped. They might also find that he was a boy of slow apprehension for one of his age. Upon these findings, taken in connection with the whole evidence, it

could not be ruled as matter of law either that the act of the plaintiff in trying to start the infeed roll with his hand was outside of what he was justified in thinking to be within the scope of the work which he was set to do, or that in view of his lack of experience and of instruction he was negligent. Nor could it be ruled as matter of law that the act was one which the defendant had no reason to expect of a boy having only his knowledge and experience, or was not one against the dangers of which it was their duty to warn such a boy. The questions of due care of the plaintiff and negligence of the defendant, as well as that relating to the scope of the order under which the plaintiff was set to work, were questions of fact for the jury. The case is clearly distinguishable from the class of cases of which *Aziz* v. *Atlantic Cotton Mills*, 189 Mass. 156, and other similar cases cited by the defendant, are types. In the opinion of a majority of the court the entry must be

*Exceptions sustained.*