REBECCA GLASS *vs.* HAZEN CONFECTIONERY COMPANY.

Suffolk.   January 17, 1912. — February 27, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, SHELDON, & DeCOURCY, JJ.

*Negligence,* Employer's liability.  *Practice, Civil,* Question for the jury, Conduct of trial: judge's charge, requests and rulings, Exceptions.  *Agency,* Scope of authority.  *Evidence,* Opinion: experts.

At the trial of an action at common law against the proprietor of a candy factory for personal injuries suffered by the plaintiff while an employee therein and at work in front of a caramel cutting machine, it appeared that the machine had an endless canvas carrier belt or apron revolving in a horizontal plane on rollers, that trays of uncut caramel were placed upon the carrier belt and by it were carried under knives revolving above it, which cut the candy.   There was evidence that the canvas belt had become loose, that in such a condition it slipped upon the rollers and did not move so fast, and that, if pressed down, it would jump suddenly forward to the full speed of the rollers and the hand of one so pressing it was in danger of being drawn upon the knives; that without instruction or warning as to the machine's defective condition, the plaintiff, who was inexperienced, was set at work at it and was told merely to watch the candy as it went under the knives and to keep it straight, that in attempting to do as she was told she pressed down on the carrier belt, her hand was drawn in, and she was injured.  *Held,* that it could not be said as matter of law that the risk of the injury which the plaintiff suffered was so obvious as to have been assumed by her; and that the questions, whether the plaintiff when injured was in the exercise of due care and whether the defendant had failed in the duties of furnishing a reasonably safe machine and of properly instructing and warning the plaintiff as to hidden dangers and defects in the machine, were for the jury.

It is within the discretionary power of a judge presiding at a trial to read to the jury after the close of the charge a ruling which he previously had been asked to give; and there can be no exception to the exercise of that discretion, especially when, before reading the ruling, he states in substance that, in reading it, he did not want the jury to understand that he intended "to call specific attention to any particular portion of the case so as to give it an undue prominence."

TORT at common law for personal injuries sustained by the plaintiff while in the employ of the defendant at its candy factory, as stated in the opinion.   Writ dated May 6, 1908.

In the Superior Court the case was tried before *Dana,* J.   The facts in evidence are stated in the opinion.

The testimony of experts, referred to in the last paragraph of the opinion, which was admitted subject to exceptions by the defend-

ant, was as follows: One Fairbairn, an expert testifying for the plaintiff, was asked in direct examination, "Assuming that this machine here is a candy cutting machine with nothing on the apron at all, and that caramel candy is to be cut into lengths on that machine, by placing that caramel candy on trays on the front end of the machine, what, if anything would be reasonably necessary to insure safety in the use of that machine?" He answered, "A safety guard." One Gillis, a witness for the defendant, was asked in cross-examination, "It is perfectly practicable, is it not, to have a guard across, — a stiff guard across from upright to upright in front of these knives?" He answered, "It is."

At the close of the evidence, the defendant asked the presiding judge to rule that, on all the evidence the plaintiff was not entitled to recover, and as follows:

"(6) The danger of having her hand caught under the revolving knives even if she were not set to work upon the machine, was an obvious one. The mere fact that the plaintiff could not tell the exact degree of danger if the nature of it can be readily seen is not enough to require warning and instruction to a person of the plaintiff's intelligence."

"(10) There is no evidence of any defect in the condition of the caramel cutter.

"(11) There is no evidence of any hidden or concealed danger in the operation of the machine.

"(12) The tendency of a canvas belt to increase its speed in passing over a revolving roller when the belt is pressed down is obvious to any person of average intelligence.

"(13) In view of the length of time the plaintiff had been at work in the vicinity of the caramel cutter she must be assumed to have been familiar with the dangers incident to its operation.

"(14) It appears on all the evidence that the plaintiff's regular occupation was to put the candies into trays, and the defendant had no reason to suppose that she would ever attempt to operate the machine, and was therefore under no duty to warn her of dangers incident to its operation.

"(15) Even if the plaintiff's testimony that McDonald left the machine and told her to see that the candy then on the machine went straight is believed, she cannot recover; for the proximate cause of the accident was the negligence of a fellow servant.

"(16) The defendant is not liable, if McDonald told the plaintiff to watch and see that the candy then on the machine went straight. The plaintiff was not hired to do this work and was acting outside the scope of her employment, even if induced to do so by the direction of a fellow servant.

"(17) The defendant did not set the plaintiff to work upon the machine and is not liable for the act of a fellow servant of the plaintiff in directing her temporarily to act as his substitute."

The rulings were refused.

The presiding judge, subject to an exception by the defendant, left it to the jury to determine whether the Mrs. Talbot referred to in the opinion had such authority as would justify her in authorizing the plaintiff to obey orders of McDonald.

That part of the charge, referred to in the opinion, which referred to a guard upon the machine, was in substance as follows: "On the question of the machine being an unsuitable machine to be furnished to the plaintiff, and on the necessity of a guard, the law is as follows: The defendant is bound to furnish suitable machines. The defendant is not bound to furnish any particular kind of machinery, or the best, or the safest; but the defendant is bound to use reasonable care to provide a suitable machine; and, in this case, if this plaintiff had been warned of this danger, or told of this defect, the defendant had the right to use this machine, and would not be bound to use some other or different machine, even if that machine would be safer; but, if the defendant chose to use this machine, then, on the question of whether the machine was defective or not, if the plaintiff did not know of the danger or defect, that is to say, the danger or defect was hidden, then there would be a duty on the part of the defendant, if the defect or danger was not obvious, to furnish a machine that on the whole was reasonably safe; . . . Of course, if the risk or danger was obvious, there was not any liability on the part of the defendant; and, if the danger or defect was hidden within the definition that I have given, then there was the duty on the part of the defendant either to give a warning of the defect or danger, or else to see to it that the machine furnished was reasonably suitable under all the circumstances for the purpose for which it was furnished."

At the close of the charge the presiding judge read to the jury a ruling as to damages which the plaintiff previously had asked

for, stating to them before doing so, "in reading this I do not want you to understand that I intend to call specific attention to any particular portion of the case so as to give it an undue prominence."

The jury found for the plaintiff in the sum of $8,000, of which amount the plaintiff remitted $2,000 in accordance with an order of the presiding judge directing that she should do so, or that there should be a new trial. The defendant alleged exceptions.

*E. K. Arnold*, (*S. H. Batchelder* with him,) for the defendant.

*E. C. Stone*, (*J. Michelman* with him,) for the plaintiff.

DeCourcy, J. The plaintiff, an employee of the defendant, was injured by the revolving knives of a caramel cutting machine. The parts of the machine involved in the case are an endless canvas belt or apron revolving in a horizontal plane, two rolls or rollers which move the apron by friction, and the series of circular parallel knives rotating above the apron. When the power is applied the operator places on the moving apron a tray containing a batch of caramel, and the candy thus carried is cut into strips the first time and into squares the second time it passes beneath the knives. At the time of the accident the plaintiff was at the front end of the machine, and in attempting to make the candy go through the machine straight she pressed her hand down upon the tray, whereupon the hand was thrown forward and under the knives.

The case was submitted to the jury on two common law counts, the first alleging that the defendant set her at work upon dangerous machinery without giving her sufficient instruction, the second alleging that she was set at work upon dangerous machinery that was in a defective condition. The case is here upon the defendant's exceptions to the refusal of the presiding judge to give certain rulings, also to portions of the charge and to the admission of certain evidence.

The legal duty owed by the defendant to the plaintiff with reference to the facts connected with the accident is determined by the preliminary issue: Was the plaintiff acting in the course of her employment when working on the front of the machine, or did she undertake this work as a volunteer, without the defendant's consent and in disregard of the warnings of others? Upon this question there was evidence to warrant the jury in finding that when the plaintiff applied to the defendant's superintendent for

work she was referred to Mrs. Talbot, the "forelady having charge of the girls;" that Mrs. Talbot had authority to order the plaintiff what to do; that she had taken the plaintiff to this machine, directed her to work with one McDonald who operated it, and said to the plaintiff, "You should mind him and he will tell you what to do;" and that shortly before the accident McDonald called her from her place at the back of the machine to the front and directed her to watch the candy as it went under the knives and to keep it straight. It is not our province to consider the weight of the evidence submitted by the defendant to contradict the plaintiff's version and which the jury were not bound to accept. *Lindenbaum* v. *New York, New Haven, & Hartford Railroad,* 197 Mass. 314, 323. The jury found, and were warranted by the evidence in finding that the plaintiff was set at work at the front end of the machine by some person authorized by the defendant to place her there. *Grace* v. *United Society called Shakers,* 203 Mass. 355. Cases like *O'Brien* v. *Rideout,* 161 Mass. 170, and *Grebenstein* v. *Stone & Webster Engineering Corp.* 205 Mass. 431, where the plaintiff was set at work in a dangerous place by an unauthorized fellow servant, do not apply.

When the defendant, through McDonald, placed the plaintiff at work on the front of this machine, it became its duty to give her suitable instructions. As it could not delegate this duty to any one else it is liable to the plaintiff if her injury was due to the failure to give her such instructions; and it does not claim to have given her any information or caution upon the subject, contending that it never set her at work on the front of the machine.

The defendant further contends that, even if the plaintiff was set at work without instruction, it is not liable because the danger from which the plaintiff suffered was one of which she assumed the risk. This would be true if the danger complained of were an obvious one, such as would be encountered if she permitted her hand to remain upon the moving tray or apron, as manifestly it would be carried into the knives. But the danger of which the plaintiff complains, and one upon which the case was tried, is the liability, when the belt has become loose, of having the hand thrown forward into the knives when it is momentarily pressed upon the moving belt, as in the act of guiding the tray. Such a perilous condition is due to the fact that when the belt is loose it will not

move so fast as the rolls; and if one then presses down upon the belt the friction between it and the rolls will be increased and the belt at once will be brought up to their speed. The quickness or jerk in the increase of the speed depends largely upon the degree of looseness of the belt. It cannot be said as matter of law that this danger of the workman's hand being thrown forward when pressure tightens a loose belt is an obvious one. It is not apparent to the eye of the inexperienced workman, but is hidden and obscure until disclosed by explanation or experience. *Wheeler* v. *Wason Manuf. Co.* 135 Mass. 294. *Hanson* v. *Ludlow Manuf. Co.* 162 Mass. 187. *Jarvis* v. *Coes Wrench Co.* 177 Mass. 170. *Halley* v. *Nashua River Paper Co.* 202 Mass. 164. The jury might well find that the plaintiff, unfamiliar with machinery, was not in fault for not realizing this danger, and that the defendant ought to have known of its existence, as it long had been known to the foreman of the room and to McDonald who operated the machine.

Under the second count, for failure to furnish a reasonably safe machine, the same result is reached. This duty also was personal to the employer, and was a continuing obligation which might require "frequent and efficient inspection and repair." *Ryan* v. *Fall River Iron Works Co.* 200 Mass. 188, 192. Aside from the absence of a safety guard, the jury could find that the defendant failed in its duty by allowing the belt to become loose and the machine to be in a defective condition in consequence thereof.

The issue of the plaintiff's due care was clearly for the jury upon her testimony.

It is apparent from what has been said that the defendant's requests were properly refused. The questions of the defective condition of the machine and the hidden peril in its operation, the obviousness of the danger and the plaintiff's assumption of the risk were all for the jury upon the evidence. The second part of the sixth request was not applicable to the case, as the plaintiff's claim was that she was ignorant of the kind or nature of the real danger and not merely of its degree or extent; and that she had neither knowledge of nor reasonable cause to anticipate the danger. *Anderson* v. *Marrinan,* 202 Mass. 193. The last four requests assume the truth of facts that were in dispute.

The exceptions to the charge cannot be sustained. Whether Mrs. Talbot was authorized to direct the plaintiff to obey the

orders of McDonald was properly and correctly left to the jury. The testimony of the plaintiff and of the defendant's witness Mc-Donald as to the authority and acts of Mrs. Talbot in the defendant's factory made the issue one of fact. The single reference in the charge to a guard was not harmful to the defendant. A guard may have been reasonably necessary to ensure a safe machine. See *Wheeler* v. *Wason Manuf. Co.* 135 Mass. 294. But the judge carefully instructed the jury in this connection that if the risk or danger was obvious, — as the absence of a guard would be, — there was no liability on the part of the defendant for using this machine and it was not bound to provide a different or safer one.

It was discretionary on the part of the presiding judge to read to the jury a request of the plaintiff that had been overlooked; and in doing so he carefully guarded the defendant's rights.

The question asked of the expert witness was admissible. *L'Hote* v. *S. B. Dibble Lumber Co.* 203 Mass. 294. The inquiry as to the practicability of having a guard in front of the knives was relevant under the second count. *Wheeler* v. *Wason Manuf. Co.* 135 Mass. 294. *Silva* v. *Davis,* 191 Mass. 47.

*Exceptions overruled.*