THOMAS J. FITZGERALD *vs.* LEWIS M. YOUNG & trustee.

Hampden.    October 2, 1916. — October 18, 1916.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & PIERCE, JJ.

*Practice, Civil,* Exceptions, Conduct of trial, Verdict: special. *Witness,* Impeachment, Redirect examination. *Negligence,* Employer's liability. *Evidence,* Chalks and photographs.

Where at the trial of an action of tort for personal injuries the plaintiff offers in evidence a photograph of the machine by which he was injured, which represents the machine in a different condition from that in which it was at the time of the accident, and the photograph is excluded by the judge, it is not open to the plaintiff to argue in this court, upon an exception to the exclusion of the photograph, that it might have been used as an illustrative chalk to assist the jury in understanding the respective contentions of the parties as to the character of the machine in the two different conditions, if he did not call the attention of the judge at the trial to the proposed use of the photograph as such an illustrative chalk and ask for permission to use it in that way.

A witness for the plaintiff, who, after testifying on his cross-examination that he was "not in any way prejudiced against" the defendant, stated, "I did at one time borrow some money from him," then was asked, "Have you paid it back?" and, subject to exception, was allowed to answer in substance that he had not. *Held,* that the admission of the answer of the witness was within the discretionary power of the presiding judge, and that it could not be said that an undue delay on the part of a borrower in discharging a just debt is not some evidence that his mind is unfavorably disposed toward his creditor.

In an action by a workman against his employer for having the fingers of one hand cut off by a planing machine on which he had been set at work by an employee of the defendant whom he had been told to obey, the plaintiff introduced evidence to show that at the time of the accident the machine was operated without

a back roll and that it was defective and dangerous because of the absence of the back roll. After evidence contradictory of this had been introduced by the defendant, the plaintiff offered evidence in rebuttal "to show that the machine could be run without the back roll." This evidence was excluded by the presiding judge. *Held,* that the evidence was a part of the plaintiff's case and that it was within the discretionary power of the judge to exclude it when offered by him in rebuttal.

In an action by a workman against his employer for having the fingers of one hand cut off by a planing machine on which he had been set at work without previous experience, there was evidence that the plaintiff did not know or appreciate that a plank as it passed through the planing machine was apt to "kick back" or that, if it did, the natural consequence would be to draw his hand into the knives if it was near them. It was found, on evidence warranting that finding, that the machine was not defective or dangerous. The judge, who ordered a verdict for the defendant, in framing issues for the jury did not leave to them the question, whether the plaintiff should have been warned that a plank as it passed between the roll and the knives of the planing machine was likely to jump and "kick back," taking with it the hand of the operator unless he seasonably and adequately guarded against such a result. *Held,* that the plaintiff was entitled to go to the jury on this issue, if there also was evidence that he was acting in the course of his employment.

In the same case there was evidence on which the jury could find that the defendant's superintendent ordered the plaintiff to go to work for the defendant's blacksmith and to help him round the blacksmith shop as his helper, telling him that he should be under the blacksmith until he got further orders and that he should obey any instructions that the blacksmith gave him, and that the blacksmith set the plaintiff at work on the planing machine without giving him any warning or instruction. *Held,* that the plaintiff was entitled to go to the jury upon the question whether he was acting in the course of his employment in going to work on the planing machine.

A blacksmith, employed by a contractor, who by order of the general superintendent of the contractor is "boss" over his single helper in the blacksmith department, carried on in a shack containing a forge, an anvil and a lathe, cannot be found to be a person acting as superintendent within the meaning of the employers' liability act.

Where at the trial of an action of tort for personal injuries the presiding judge submits to the jury certain special questions, presenting issues on which the plaintiff has the burden of proof, a failure to answer two of the three questions, because the jury disagree upon them, is not equivalent to a finding for the defendant on those issues, but leaves them open and undetermined.

TORT for personal injuries sustained on July 29, 1911, when the plaintiff was in the employ of the defendant, who was constructing a dam for the city of Holyoke at the White reservoir in that city. Writ dated December 13, 1911.

The declaration contained five counts. The first count was as follows: "And the plaintiff says that on or about the twenty-ninth day of July, 1911, he was in the employ of the defendant;

that it was the duty of the defendant to give him sufficient instructions how to properly perform his duty as such employee; that it was the duty of the defendant to give him sufficient notice of the dangers and perils incident to his duty as such employee; that the defendant had reason to know of such perils and dangers; that the defendant failed to give him such instructions and such notice, whereby the plaintiff, while in such employ, and while in the exercise of due care and diligence, was injured, and suffered great pain of body and anguish of mind, and paid out large sums of money for medicines and medical attendance, and was permanently injured and unable to work at his trade, and his hand and fingers were cut off."

The second count alleged a defect in the ways, works or machinery of the defendant; the third count alleged negligence of a superintendent; the fourth count alleged negligence of one acting as superintendent; and the fifth count alleged a negligent failure to furnish the plaintiff with suitable machinery or appliances for his work and negligence in failing to keep the machinery and appliances in suitable repair and condition.

The plaintiff also filed specifications as to each count of his declaration. The specifications as to the first count were as follows: "The plaintiff says the work at which he was set by the defendant, of the perils and dangers of which he was ignorant, was that of working on a certain planer; the dangers and perils of which he was ignorant were the danger of getting his hand caught in the knives in the rear of said planer, the danger of putting his hand on or near the board, of brushing off chips, or taking off chips from said planer board, of the fact that there was no guard, roll or anything else to prevent his hands from going into or being thrown into said knives; of the presence of defects hereinafter mentioned in said planer; of the tendency of planks going through said planer to jog or shake or be drawn back into said planer."

In the Superior Court the case was tried before *Hitchcock*, J. The evidence is described in the opinion. At the close of the evidence the judge submitted to the jury three special questions, which, with the action of the jury upon them, were as follows:

"1. Was the plaintiff, Fitzgerald, directed by Monte to help on the planer at the time when he was injured?" The jury disagreed.

"2. Was the plaintiff, Fitzgerald, in the exercise of due care when he was injured?" The jury disagreed.

"3. Was the planer on which the plaintiff, Fitzgerald, was injured in a defective or dangerous condition, that was known to the defendant, and not known to the plaintiff, and not obvious on inspection, at the time the plaintiff was injured?" The jury answered "No."

By direction of the judge the jury, having answered the third question in the negative, returned a general verdict for the defendant. The plaintiff alleged exceptions, including certain exceptions in regard to the admission of evidence which are described in the opinion.

The case was submitted on briefs.

*R. P. Stapleton & E. J. Stapleton,* for the plaintiff.

*F. J. O'Neil & W. T. Dillon,* for the defendant.

PIERCE, J. About ten days before July 29, 1911, the plaintiff was hired to work as a laborer for the defendant, who was engaged in building a basin for a reservoir and dam. One Peckham, who hired the plaintiff, was the only superintendent of the defendant. The plaintiff testified that on the morning of the third day of his employment, "Mr. Peckham told me to go to work for Mr. Monte and help him around the blacksmith shop as his helper, and I would be under Mr. Monte from then until I got further orders; . . . he told me any instructions Mr. Monte should give me should be obeyed by me." "I went right over to the blacksmith, to Mr. Monte; . . . the blacksmith shop was right close to the dam; . . . it was simply the forge and anvil, and there was a roof over the place where the machinery was, and there was a partition on one side of it; there was a gasoline engine and lathe and planer there; I worked there about eight days up to the day I was hurt; I was helping Mr. Monte; sometimes I was striking and helping him on heavy blacksmith work, threading bolts, and tapping nuts . . . ; other times I would help while he was drilling on a lathe; the day I was injured, Mr. Monte spoke to me about doing some other work, . . . he told me I ought to keep busy at something; he told me any time he be away to go and help them fellows at the planer; it was the nearest machine to the anvil; so he went away after he told me that and I went over there and I helped them work on the planer for perhaps half an

hour; then when he came back, I followed him back to the anvil and helped him; . . . about nine he had to go away . . . and he told me to go and help them on the planer; . . . I says 'there are two men there now, what am I to do?' He says 'you can squeeze in there somewhere and keep busy until I come back and do as the other fellows do;' they were pulling on a plank at the time; the plank was only out perhaps five feet; there was a young Italian fellow on the end of the plank and the only place for me to get hold was between him and the planer; I had hold like this (illustrating) and he was brushing the shavings and chips off with his hands and naturally I commenced to brush them off from where he left off, close to the machine; just as I was helping like that, the plank jumped back and in consequence my fingers got caught and were chopped off; . . . I had never worked on a planer . . . before that morning that I was injured; . . . I was not familiar with planers; . . . I used to see the fellow brushing off the chips with his hand every day; . . . I never knew where the knives were on the planer before I was injured; . . . I always had an idea that there were knives in there; I knew there were knives there; . . . I always thought they were under cover somewhere; I did not know or realize that the plank was apt to kick my hand or draw my hand back into the knives; I did not know there was anything the matter with the planer. Neither Mr. Peckham, nor Monte nor anybody ever mentioned any danger to me about the machine; nobody gave me any warning or instructions in regard to brushing off the chips . . . ; nobody gave me any instructions in regard to any danger to my hand being drawn back into the knives by the plank pulling back or kicking up; nobody ever warned me or told me there was anything between my hand and the back of the planer."

In support of the contention that the planer was defective and dangerous because of the absence of an upper press or roll on the back of the machine, which would serve also as a guard, the plaintiff introduced two verified photographs. In anticipation of the defendant's case, he offered in chief a photograph which showed the planer with an upper roll. He denied that it accurately represented the machine as it was at the time of the accident. The presiding judge refused to receive it in evidence. The plaintiff now contends that it was admissible for the purpose of illustrating the dangerous nature of the planer when equipped with the rear

roll, and of proving that it was not adequately guarded even in that condition, and also, that it should have been admitted so that the jury might judge as to whether the witnesses who said they saw it without the roll could distinguish the difference between the planer with and without the roll.

These considerations have all the earmarks of after thoughts. Had they been adequately called to the attention of the presiding judge, it is fair to assume that permission would have been granted to use the photograph as an illustrative chalk to assist the jury in understanding the respective contentions of the parties. There was no error in its exclusion.

Carmody, a witness for the plaintiff, after testifying in cross-examination that he was "not in any way prejudiced against Mr. Young," stated, "I did at one time borrow some money from him." He was then asked, "Have you paid it back?" to which, subject to the plaintiff's exception, he replied in substance that he had not. We cannot say that the fact that a borrower of money unduly delays to discharge his just obligation is not some evidence of a state of mind toward his creditor which has a tendency to prevent dispassionate consideration of any question involving the creditor's interests. The admission of the testimony was within the discretion of the presiding judge. *Wallace* v. *Taunton Street Railway,* 119 Mass. 91.

The evidence offered in rebuttal "to show that the machine could be run without the back roll" was not improperly excluded by the presiding judge in the exercise of his discretion. It was a part of the plaintiff's case to show that the planer was in fact operated without the back roll at the time of the accident, and to prove that it was defective and dangerous because of the absence of the back roll. *Burnside* v. *Everett,* 186 Mass. 4, 5, and cases cited.

The special finding of the jury is warranted by the testimony, and established that the machine, whether it had or had not the back roll and pressure roll, was not as a machine defective or dangerous. The jury, upon making this finding, brought in a general verdict for the defendant, by direction of the judge. The plaintiff duly excepted to the direction, and contends, as we think, rightfully, that there remained upon the pleadings undecided the issue whether the plaintiff should have been warned that the

material as it passed between the roll and knives of the planer was likely to jump and "kick back" taking with it the hand of the operator, unless he should seasonably and adequately guard against such a result.

The plaintiff was inexperienced. There was evidence that he did not know or realize that the plank as it passed through the planer was apt to "kick back" or that, if it did, the natural consequence would be to draw his hand into the knives. Such result is not an obvious result, and the fact that a stick may jump as it is planed is not a matter of common knowledge. We are of opinion that the plaintiff was entitled to go to the jury upon this issue, if he was acting in the course of his employment and not as a volunteer. *Hanson* v. *Ludlow Manuf. Co.* 162 Mass. 187. *Joyce* v. *American Writing Paper Co.* 184 Mass. 230. *Silva* v. *Davis,* 191 Mass. 47. *Lavartue* v. *Ely Lumber Co.* 213 Mass. 65, 67.

The testimony relating to his employment in connection with the operation of the planer is conflicting, but the jury could find that he entered upon that work in response to the direction of Monte, who was his "boss" and a person whom he was bound to obey in the work of the blacksmith shop.

The presiding judge rightly ruled that Monte was not an acting superintendent. Other than the fact that he was "boss" over the plaintiff, his single helper in a blacksmith department in a shack that contained a forge, an anvil and a lathe, there is no evidence that at the time of the accident he exercised any direction or control over any workman in the employ of the defendant.

There remains the question whether there was evidence to warrant the jury in finding that the plaintiff was set at work at the planer by Monte, and whether Monte was authorized by the defendant to place him there. There was ample evidence, if believed, to sustain the plaintiff's contention that he was directed by Monte "to help them fellows at the planer." The evidence was undisputed that he was told by the general superintendent to go and help Monte. The jury could believe that he was told to go to work for Monte and help him around the blacksmith shop as his helper; that he should be under Monte until he got further orders and that he should obey any instructions Monte gave him. If the jury should believe that the superintendent gave the above directions to the plaintiff, we cannot say as matter

of law that Monte was without authority to set the plaintiff at work about the planer, or that the plaintiff was a mere volunteer. If Monte had authority and did direct the plaintiff "to help them fellows at the planer," Monte represented the defendant, and the defendant was bound to give the plaintiff suitable instructions and is answerable for the failure to have that duty performed, whether and to whomsoever it may be delegated. Hammond, J., in *Grace v. United Society called Shakers*, 203 Mass. 355, at page 357. *Glass* v. *Hazen Confectionery Co.* 211 Mass. 99.

The failure of the jury to agree upon the questions, "1. Was the plaintiff, Fitzgerald, directed by Monte to help on the planer at the time when he was injured?" and "2. Was the plaintiff, Fitzgerald, in the exercise of due care when injured?" does not amount to a finding of fact that Monte did not direct Fitzgerald to help on the planer or that in so doing Fitzgerald was not in the exercise of due care. These issues, like the right to be warned, remain undetermined.

The new trial shall be limited, under count one of the declaration, to the determination of the issues not submitted to or not settled by the jury in the case at bar, and as to all other issues the verdict is to stand. St. 1913, c. 716, § 1.

*Exceptions sustained.*