DALTON FALLON *vs.* CLIFTON MANUFACTURING COMPANY.

Suffolk.    November 16, 1910. — January 6, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Corporation*, Officers and agents.  *Agency*, Ratification.  *Contract*, What constitutes, Implied.  *Practice, Civil*, Exceptions, Amendment of verdict.

At the trial of an action against a corporation for alleged arrears of salary there was evidence tending to show that the treasurer of the corporation agreed to pay the plaintiff $50 per week for a year for services to the corporation, that the plaintiff performed the services for about six months, during the first three of which the treasurer was absent, and during five months received pay at the rate of $50 per week with the knowledge and consent of the defendant's officers, and the secretary of the corporation testified that thereafter, a dispute arising, at a meeting of the directors of the defendant " it was allowed " that the plaintiff was owed the amount that he claimed, " but we wanted to try and make the best settlement we could."  *Held*, that a verdict for the plaintiff was warranted.

Where the declaration in an action of contract contains two counts alleged to be for the same cause of action, one upon a special agreement for a certain fixed amount, and the other upon a *quantum meruit*, an exception by the defendant to a refusal by the presiding judge to rule that on all the evidence the jury should find for the defendant on the special count will not be sustained, even although there were no evidence to support a verdict for the plaintiff on that count, if the jury return a general verdict in an amount less than the fixed sum claimed in that count, since it is apparent that the jury did not find for the plaintiff on the special count and that the defendant was not harmed by the refusal to rule.

At the trial of an action against a corporation upon a *quantum meruit* for bringing about the sale of some of the capital stock of the defendant, there was evidence that the treasurer of the defendant employed a broker to obtain a purchaser of capital stock, to whom a purchaser applied, that the broker requested some one connected with the defendant to take the matter up with the purchaser and that the treasurer asked the plaintiff to do so, stating to the plaintiff that he would be " well paid for it."  The plaintiff did as requested, the sale was made, and the broker was paid a commission.  There also was evidence that, a controversy arising as to whether the plaintiff should be paid anything, the matter was brought before the defendant's board of directors who left it to the

secretary of the defendant " to settle," the secretary testifying that " it was allowed that we owed him this amount." *Held*, that there was evidence for the jury on the question of the defendant's liability.

The declaration in an action of contract against a corporation contained three counts, the first being for alleged arrears of salary, the second for a fixed amount alleged to be due as a commission for bringing about a sale of shares of capital stock of the defendant, and the third, alleged to be for the same cause of action as the second, being on a *quantum meruit* for bringing about the sale of the capital stock. At the trial there was evidence for the jury on the first and the third counts, but none on the second. The defendant asked for a ruling as to each count that on all the evidence the jury should find for the defendant. The rulings were refused. The jury found a general verdict for the plaintiff for an amount equal to the amount claimed in the first count with interest from the date of the writ, which was less than the amount claimed in the second count, and the defendant alleged exceptions. While the defendant's exceptions were pending, but before they were entered in this court, the plaintiff filed a motion, alleging that " the evidence at the trial would have warranted " the verdict which was rendered " on the first count, and upon no other," and asking that the verdict be entered on the first count and that on the second and third counts judgment be entered for the defendant. The motion was allowed, subject to an exception by the defendant. *Held*, that the exception must be overruled because the defendant was not harmed by the granting of the motion and justice did not require a new trial.

CONTRACT, with a declaration in three counts. The first count was upon an account annexed for a balance of $438.70 and interest, alleged to be due to the plaintiff as salary as vice president and treasurer's assistant of the defendant from November 10, 1902, to March 15, 1903, at $50 per week. The second count was for bringing about a sale of capital stock of the defendant, the count alleging a special agreement made with the plaintiff by the defendant through its treasurer and manager, and claiming $1,000 as " the usual and customary commission " for the bringing about of the sale. The third count, alleged to be for the same cause of action as that set out in the second count, was upon a *quantum meruit* for the services in bringing about the sale of stock. Writ dated April 10, 1903.

The case was tried in the Superior Court before *Sherman*, J. The following is the substance of the material evidence :

As to the sale of stock, the plaintiff testified: " In the spring of 1902, a broker by the name of Solomon was employed by the treasurer [of the defendant], to obtain a purchaser for stock of the company, and a purchaser applied to him. Solomon requested some one connected with the company to take the matter up with this purchaser. The treasurer asked me to do this.

I asked if I would be paid for my time, and she said I would be well paid for it. I took the matter up with the purchaser and he subsequently bought the stock and paid $20,000 for it. A commission was paid to Solomon."

The plaintiff further testified that in May of 1902 a conversation took place between one Amanda M. Lougee, treasurer and manager of the defendant, and himself in the presence of one William H. Chick, secretary of the defendant, in which Miss Lougee stated to him that she was contemplating taking a long vacation in Colorado and desired him to give his whole time to the defendant's business; that he told her that he should want $50 per week and " one per cent on sales " [of capital stock] ; that she said she was willing to make a contract with him; that he said he should want a contract for one year; that she said she was willing to make such a contract, but that " the amount of commission was to be left until she came back, she thought it excessive, so we left it in abeyance "; that he went to work under that arrangement " for a year," and was paid the salary of $50 per week until the following November 10, when the treasurer refused to pay him more than $25 per week. It appeared that, at the rate of $25 per week since November 10, there was $3.70 due him at the date of the writ.

The plaintiff further testified that he rendered to the treasurer of the defendant a statement of the amount set out in the account annexed to the first count of the declaration, and that he had a conversation with the other directors of the defendant two hours before the annual directors' meeting. " They said they wanted to settle this thing up, and they wanted me on the board, and they thought we had better settle our differences. Miss Lougee said that. I said ' Well, do you acknowledge that you owe me ? ' She said, ' Well, I suppose I will have to.' And Mr. Chick spoke up and said, ' Remember what you are doing, because if you acknowledge you owe you have got to settle.' She said, ' Well, I admit I owe it.' " The plaintiff also testified that at the directors' meeting it was voted " that they settle with me, and Mr. Chick be appointed a committee of one to settle that claim and get it out of the way."

William H. Chick, called by the plaintiff, testified in corroboration of the plaintiff as to the agreement that he should be paid

for his services $50 per week for a year, that the treasurer and manager was absent for about three months, and that the plaintiff managed the company while she was gone. As to the conversations on the day of the directors' meeting, and as to the plaintiff's claim for commissions for sale of capital stock, he testified: The plaintiff " brought a slip of paper on which he had made up his account, and spoke about what was owed him.... I stopped [Miss Lougee] and said, 'Now, Miss Lougee, if you talk about what you owe this man, or about how you are going to settle it, you accept this. Now do you consider you owe him this?' She said, 'I do, but we don't want to pay it now, but we want to fix up this matter so we can go along.' There was some talk about what cash he wanted and what balance would be paid in stock. His suggestion was to make payments of so much a week. That was the same day as the directors' meeting. Mr. Fallon was there, but he withdrew from the meeting. There was some talk among the directors about paying this money to him now. It was allowed he was owed this amount, but we wanted to try and make the best settlement we could. Then the meeting was adjourned, and they made me a committee of one to make that settlement. . . . There was nothing said to me direct at any time by Miss Lougee in regard to commission on account of stock sold. Mr. Fallon [the plaintiff] and I talked, and on his slip of paper I wrote 'Stock for Hyneman.' That was the claim for what was due him, and the way it was to be settled. He said, 'If I have got to get my claim for salary, I think I might as well have what is due me as commission.' I asked him if there was anything which he claimed was due him for commissions, and he said, 'I do,' and I wrote on the inside of that little paper, 'Stock for Mr. Hyneman,' — that is, commission for the stock sold to Hyneman. That was my abbreviation."

Later the witness Chick testified, "At the meeting of the directors it was the opinion of all present that they did not owe him anything."

The treasurer of the defendant testified that the arrangement she made with the plaintiff was that he should be paid $50 per week during her absence, and that nothing was said as to commissions; that when November was reached, she stated to the plaintiff that " the company could no longer afford to pay $50

per week. but that $25 was all that it could pay the plaintiff thereafter "; that at the directors' meeting she stated that " we owed him [the plaintiff] nothing."

The president of the company testified in corroboration of the treasurer.

At the close of the evidence, the defendant asked for a ruling as to each count of the declaration that on all the evidence the plaintiff could not recover on that count. The rulings were refused, and all three counts were left to the jury, who on March 15, 1905, returned a general verdict for the plaintiff for $489.54; and the defendant alleged exceptions.

The defendant thereafter moved for a new trial on the ground that the verdict was against the evidence and the weight of the evidence, and that the verdict was contrary to law. The motion was denied on March 24, 1905.

On April 8, 1909, the plaintiff filed the following motion:

" And now comes the plaintiff and says that it appears by the record that the declaration was in three counts; that the first count was for services claimed to have been performed upon an agreement made with the defendant in the sum of $438.70 and interest; that the verdict was a general verdict in the sum of $489.54; that the evidence at the trial would have warranted that verdict on the first count, and upon no other.

" Wherefore he moves . . . that said verdict may be entered upon the first count thereof, and that on the second and third counts judgment be entered for the defendant."

The motion was allowed; and the defendant alleged a further exception.

*E. F. McClennen,* for the defendant.

*J. Bennett,* (*W. H. Mitchell* with him,) for the plaintiff.

SHELDON, J. 1. There was evidence that the treasurer of the defendant agreed with the plaintiff to pay him the sum of $50 per week for the services which he was to render; that he rendered these services with the knowledge and consent of the defendant and its officers; and that he was paid at that rate for about five months. This warranted a finding that the treasurer's agreement had been either originally authorized or subsequently ratified by the corporation. And Chick, the defendant's secretary, testified that when the plaintiff's bill was presented at a

meeting of the directors, "it was allowed he was owed this amount, but we wanted to try and make the best settlement we could." His further testimony, apparently on cross-examination, that all the directors thought "that they did not owe him anything," was to be weighed only in connection with what he formerly had said. *Dunton* v. *Derby Desk Co.* 186 Mass. 35.

2. It may be, though we should hesitate so to decide, that a verdict for the plaintiff on the second count was not warranted. There was to be sure nothing to indicate what the usual commission in such a case was. But this is not now material; for if the jury allowed him any commission it is evident from the amount of the verdict that the finding as to that must have been upon the third count.

3. Upon the third count the evidence was meagre, but there was something for the jury. Besides the plaintiff's testimony as to his agreement with the treasurer it could be found on Chick's testimony that this matter too was brought before the board of directors by Chick's memorandum on the plaintiff's bill for services, and was included in their approval, in spite of Chick's further testimony already stated.

4. Under these circumstances, the defendant was not harmed by the order made on the plaintiff's motion that the verdict should be entered on the first count, and that judgment should be entered for the defendant on the second and third counts. The averment in that motion, "that the evidence at the trial would have warranted that verdict on the first count, and upon no other," may be treated as meaning only that a verdict for that amount, being the sum claimed in the first count with interest from the date of the writ, must have been rendered upon that count alone. Whether or not this conclusion is an absolutely necessary one, it is yet manifest that a judgment upon the verdict as amended gives to the plaintiff exactly what the jury found and were warranted in finding to be due to him, and finally disposes of all the issues in the case. Computation shows that the verdict was for the amount claimed in the first count with interest to the date of the verdict; and therefore it is highly probable, if not practically certain, that the verdict was rendered upon the first count only. See *Ashton*

v. *Touhey*, 131 Mass. 26 ; *Commonwealth* v. *Delehan*, 148 Mass. 254 ; *Minot* v. *Boston*, 201 Mass. 10, 13. Justice does not require a new trial.

*Exceptions overruled.*