MASON H. STONE, trustee in bankruptcy, *vs.* ORTH
CHEVROLET COMPANY INC.

Middlesex.    March 13, 1933. — December 5, 1933.

Present: RUGG, C.J., WAIT, FIELD, DONAHUE, & LUMMUS, JJ.

*Payment. Contract,* Validity. *Practice, Civil,* Special question to jury;
Ordering verdict; Exceptions: waiver. *Corporation,* Officers and
agents.

While the submission of a special question to the jury at the trial of an
action rests in the discretion of the trial judge, and no valid exception
lies to such a submission, the judge cannot properly order a verdict
upon the jury's answer to the special question unless the answer dis-
poses of all material issues of fact.

In an action by the trustee in bankruptcy of a corporation against another
corporation for the price of goods delivered by the first corporation to
the defendant, it was *held,* that there was no invalidity in an agreement
made between the treasurer of the first corporation and a representa-
tive of the defendant whereby the defendant paid for such goods by
paying the purchase price to the payee of a note made by the first
corporation and by the payee's giving the first corporation credit for
that amount on the note.

Where the plaintiff at the trial of an action did not save an exception to a
refusal by the trial judge to give a ruling requested by him, this court,
in dealing with exceptions presented by him, fairly could assume either
that he considered the ruling so requested to have been covered by the
charge to the jury or that he did not rely at that time upon a contention
which he later made before this court with respect to such request.

CONTRACT.    Writ dated October 29, 1930.

In the Superior Court, the action was referred to an
auditor and afterwards was tried before *Morton,* J.    The
pleadings, material evidence, proceedings at the trial and
verdicts ordered by the judge are described in the opinion.
The plaintiff alleged exceptions.

*A. W. Wunderly,* (*J. H. Ramsey* with him,) for the
plaintiff.

*C. C. Steadman,* (*A. V. A. Thomason* with him,) for the
defendant.

WAIT, J.    This action was brought by an assignee for
the benefit of creditors and, by amendment, is now prose-

cuted by a trustee in bankruptcy of the Arlington Automobile Company. The declaration, upon an account annexed, sets out three hundred twenty-eight items of indebtedness arising between April 29 and October 1, 1930, totalling $6,047.05, and nineteen items of credit arising between May 30 and July 30, 1930, totalling $3,338.77. The answer is general denial and payment, and, by amendment, set-off upon a promissory note for $2,500 payable to one Huntington, which was alleged to have been purchased for value about July 7, 1930, by the defendant. The plaintiff answered to the declaration in set-off, payment, lack of consideration, and denials of signature, of authority of treasurer to sign, of power of corporation to make the note, of holding by the Orth company in due course and purchase by the Orth company.

An auditor reported findings that the defendant had owed $6,047.05 and was entitled to credits of $3,934.92, leaving a balance of $2,112.13 which, with interest from October 1, 1930, was due the plaintiff. He reported also that at the time the Orth Chevrolet Company Inc. was formed the Arlington Automobile Company "transferred a substantial amount of auto parts to the Orth Chevrolet Company." The report was very short. It did not discuss items of the pleadings, nor say anything of the note.

At the trial the plaintiff rested, after putting in the auditor's report and testimony from the treasurer of the Arlington company that he recalled transactions between the companies in which some Chevrolet parts were sold and some sent by the Arlington to the Orth company. Controversy at the trial centered about item 242 of the declaration: "June 30  Chevrolet parts as per inventory $2,112.34." The Orth company contended that these parts were security for a note for $2,500 which bore date April 16, 1930, given by the Arlington company to "R. J. Huntington, or order," and that it paid for them by paying the price, $2,112.13, to Huntington, who credited it on the note in accord with an agreement made between the treasurer of the Arlington company and Orth of the Orth Chevrolet Company. This note for $2,500 was that declared upon in set-off. It bore

an indorsement by Huntington: "July 9, 1930, credit Arlington Automobile Company on account thereof $2,112.13 by reason of parts delivered by Arlington Auto Company to Chevrolet Motor Company, or Orth Chevrolet Company, pursuant to arrangement or agreement." Issues of fact appeared with regard to the exact conversation between Orth and the treasurer of the Arlington company, and the date of placing the indorsement quoted above upon the note. The treasurer testified that after the giving of the Orth Chevrolet check for $2,112.13 to Huntington, the latter never made any demand on the Arlington company for payment of the note; nor did the Arlington company send any bill or make any claim for the price of the parts to the Orth Chevrolet Company. No evidence of the authority of the treasurer was introduced. After both parties had rested, the judge, without objection, framed the following question for submission to the jury: "Did the Arlington Automobile Company, by its treasurer, agree to give credit . . . on the note of April 16, 1930?" The plaintiff presented requests for instructions, the last of which was as follows: "14. If you find that the note for $2,500 was given in order to enable Carl Orth to recover money which he had invested in the Arlington Automobile Company, then neither the treasurer of said company nor the company itself had power to make such a note impairing the assets of the company and if you find that Peirce did agree that a payment of the Orth Chevrolet Company to Huntington should be deemed a credit on the note in question, then you must disallow such credit because neither the treasurer of the said company nor the company itself had any power to permit such a transaction to impair the assets of the corporation." The judge instructed the jury that answer to the question submitted would dispose of all the issues between the parties, and that on their answer he would direct their verdicts. After the charge, the plaintiff claimed an exception to "the submission of that one question to the jury" and to the statement that the answer given by the jury "to that one question settles the case"; and, also, to the refusal to give requests 3–9 inclusive. The jury

answered the question, "Yes." Thereupon verdicts by direction were returned in favor of the defendant in the main action and for the plaintiff, trustee in bankruptcy, on the defendant's declaration in set-off.

The plaintiff contends there was error in submitting the question with the instruction that the answer was decisive of all issues; and in directing the verdict for the defendant. Under our trial practice, a judge in his discretion may frame and require answer to special questions put to a jury. No valid exception lies to the exercise of this power. It rests in the discretion of the judge. *Dorr* v. *Fenno,* 12 Pick. 521. *Spoor* v. *Spooner,* 12 Met. 281, 286. *Lawler* v. *Earle,* 5 Allen, 22. *Mair* v. *Bassett,* 117 Mass. 356, 359. *Spurr* v. *Shelburne,* 131 Mass. 429. *Florence Machine Co.* v. *Daggett,* 135 Mass. 582. *Boston Dairy Co.* v. *Mulliken,* 175 Mass. 447. *Hill* v. *Hayes,* 199 Mass. 411, 417. *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 520. *Newell* v. *Rosenberg,* 275 Mass. 455, 459, 461. See also *Ashton* v. *Touhey,* 131 Mass. 26. There is, however, reversible error if a verdict be ordered upon an answer to a question so put, unless the answer disposes of all issues material in the case. *Fitzgerald* v. *Young,* 225 Mass. 116.

So, in the case before us, there was no error in submitting the question to the jury; but it remains to be decided whether the question and answer cover all the material issues. We think the trial judge was right in asserting that, upon the evidence and the course of the trial, the question whether the plaintiff was entitled to a verdict depended upon the fact whether the defendant had paid for the parts declared by item 242 to have been sold to the defendant through the carrying out of the alleged agreement for payment to Huntington of the amount for which he held them as security for his note. This, of course, involved the determination of the validity of the agreement, if made. There was no contradiction that an agreement was made, and no evidence of lack of authority in the treasurer of the Arlington company to make it. Compare *Fallon* v. *Clifton Manuf. Co.* 207 Mass. 491, 495. No exception was claimed to the judge's statement, as fact, that

these parts had belonged to the Arlington company and had been delivered to the Orth company; and, as law, that the burden rested on the Orth company to prove that it had paid for them through an arrangement with the Arlington company by credit on the Huntington note. The defendant disclaimed any right to hold the note for $2,500 for any other amount than the $2,112.13 indorsed upon it by Huntington. The plaintiff had no interest in arrangements between Huntington and the Orth company. In his brief the plaintiff argues that it could be found that the Huntington note was a fraud on the creditors of the Arlington company, given, without consideration, in order to enable Orth to withdraw, at least in part, his investment in the Arlington company; and that an issue of fact for the jury was presented thereby which was not covered by the question put. The only basis for this contention is discrepant language of Orth in his testimony with regard to conversation with the treasurer of the Arlington company with reference to his desire to withdraw something of what he had put into the Arlington company and to the purchase of the Chevrolet parts made security for the Huntington note of April 16. We have examined the language but find nothing which directly supports an inference of fraud or which rises above the merest conjecture (compare *Traverse v. Wing*, 256 Mass. 320, 322). The plaintiff's request 14 is based upon this theory of fraud. It was not given in terms. No exception was claimed for an alleged refusal. We may, therefore, fairly assume either that the plaintiff considered it to have been covered, in substance, by what was said in the charge, or that he did not rely then on the argument which he now makes. It would be unfair to the judge to sustain an exception to conduct which he might have modified had this request been recalled to his attention. We are satisfied, however, that the judge was right in thinking that all the material issues in dispute were in fact involved in answering the question posited by him; and that the charge covered the case sufficiently. The special finding settled the material issue in the case as presented on the evidence. No material issue of fact remained

to be passed upon by a jury when the verdicts were ordered. The plaintiff has not been prejudiced. He has not argued the exception to the refusal of the requests 3–9 inclusive save as their subject matter was involved in the other exceptions. We treat it as waived, but have considered whatever might have been material in the requests in dealing with the contentions made. See *Ashton* v. *Touhey*, 131 Mass. 26, and *Newell* v. *Rosenberg*, 275 Mass. 455.

*Exceptions overruled.*