HARRY K. COPITHORN *vs.* BOSTON AND MAINE RAILROAD.

Suffolk.    December 8, 1937. — December 1, 1938.

Present: FIELD, C.J., LUMMUS, QUA, & COX, JJ.

*Negligence,* Grade crossing, Railroad, Violation of law. *Practice, Civil,* Special questions to jury, Ordering verdict. *Conflict of Laws. Proximate Cause.*

In an action here for an alleged tortious injury received in New Hampshire, the law of New Hampshire determined whether a right of action existed, and the law of this Commonwealth regulated the remedy and its incidents.

Whether additional special questions shall be submitted to a jury is wholly within the discretion of the trial judge.

A verdict cannot properly be ordered on the basis of answers of the jury to special questions unless they settle all material issues of fact.

Negligence of the engineer of a railroad locomotive through violation of a statute requiring stopping before going over grade crossings other than those protected by a signal system approved by a public commission could not be shown without evidence that a signal which was at the crossing involved was not so approved.

An answer of a jury to a special question submitted to them must be taken as having been made in accordance with law stated in instructions relating thereto, irrespective of whether those instructions were right or wrong.

Answers of a jury to certain special questions, construed with instructions in the charge, meant that there had been no contributory violation of law by a plaintiff who sustained injuries in a collision of a locomotive engine with his automobile at a grade crossing in New Hampshire.

Evidence of the circumstances in which a locomotive engine, proceeding upgrade in New Hampshire in the daytime in a snow storm at a speed of less than twenty miles per hour over tracks covered with snow, struck an automobile which had stopped close to the tracks at a grade crossing and which the engineer could have seen for at least two hundred feet, required the submission of the issue of negligence of the engineer to the jury.

TORT. Writ in the Superior Court dated January 17, 1933.

The action was tried before *M. Morton,* J.

*D. A. Foley,* for the plaintiff.

*J. DeCourcy,* for the defendant.

Cox, J. This is an action of tort in which the plaintiff seeks damages for personal injuries sustained by him on

March 28, 1932, at a grade crossing in Concord, New Hampshire, when the automobile which he was driving and a passenger train of the defendant were in collision. The declaration, which is in four counts, alleges, in substance, in count 1 the failure of the defendant to ring the bell and sound the whistle, as required by law, at the crossing in question; in count 2 that "no gates or flagman were employed" at said crossing and that "the defendant negligently and in violation of law failed to maintain such warning signs required by law"; in count 3 that the defendant owned, operated or controlled a railroad which crossed the highway; that while the plaintiff was rightfully at the railroad crossing, he was injured by reason of the negligence of the defendant; that the train, "negligently . . . operated and controlled by the defendant and in violation of law," was in collision with his automobile; and in count 4 the failure of the defendant to maintain gates at the crossing or to have a flagman there.

At the close of the evidence the judge submitted to the jury five questions, which, as answered, are as follows: "1. Was the whistle blown and the bell rung as required by law?" "Yes"; "2. Did the speed of the train exceed 20 miles an hour at the crossing?" "No"; "3. Was the plaintiff guilty of contributory negligence?" "No"; "4. Did the plaintiff proceed at the rate of speed of less than 10 miles an hour over the last 100 feet of the highway before he reached the nearest rail of the crossing?" "No"; "5. Damages?" "No."

After consideration of these questions and answers, the judge directed the jury to return a verdict for the defendant, and the plaintiff excepted. Other exceptions of the plaintiff relate to the exclusion of evidence, to the refusal of the trial judge to give certain rulings, to his refusal to submit additional questions to the jury, and to certain portions of his charge.

The plaintiff testified that he was driving southerly toward Concord shortly before nine o'clock in the morning. The wind was from the northeast, and the falling snow, which was wet and heavy, "plastered" the sides of the

trees and poles. He had driven over the crossing in question three or four times, the last time being several years before the accident, and on the day of the accident he knew there was a railroad crossing the highway "there somewhere." He was "just barely 'crawling along'" at about eight miles an hour and could stop his automobile within a foot. He could see ahead "perhaps" one hundred fifty feet and, as he approached the crossing, he saw in a direction "quartering" to his left "this signal light . . . flash and . . . knew that . . . [he] was coming to a railroad crossing somewhere," and that a train was coming. He stopped his automobile instantly, and it did not go a foot after he applied the foot brake. He was then thirty to forty feet from the light, with his engine running and his transmission in "neutral." If he had stopped six feet before he did, there would not have been any accident. After he had "stopped there on the track" from one half a minute to a minute, through his right window he saw the train coming toward him, fifty to one hundred feet away, on his left. He heard no bell or whistle. He did not see the track until the engine struck his automobile and at that moment he was "on the extreme right just off" a street railway track. He stopped just short of the railroad track but near enough to it so that some part of the engine came in contact with his automobile. "It didn't feel as though it [the automobile] had gone over the rail," and he did not know where his automobile was "with relation to the tracks 'because the ground was so completely covered with snow, there was no sign of track, railroad or highway or street cars. It was just as blank as could be.'" There was no gateman, gates or flagman at the crossing.

At the place of the collision, the railroad crosses the Daniel Webster highway, which is a main artery of traffic running north and south, "with heavy traffic off and on." That portion of the highway which is wrought for travel is approximately twenty feet wide, and the railroad crosses it at an acute angle of thirteen degrees, so that the distance which a train traverses at the crossing over the travelled part of the highway is eighty-one feet. On the westerly

side of the highway, and approximately parallel with it, at a distance of about three feet to the nearer rail, is the track of the street railway.  The grade of the highway approaching the crossing from the north is practically level, and the grade of the railroad track from the southeast, from which direction the train came, is slightly upgrade as one approaches the crossing.  About seven feet easterly from the easterly line of the travelled portion of the highway, and about thirty-six feet north of the intersection of that line with the easterly rail of the track, there is a traffic light or flasher, which is operated by the defendant. From a point where a straight line drawn from this traffic light intersects at a right angle the westerly line of the highway, the distance in a northerly direction to the easterly rail is about forty-two feet.  There is another railroad traffic light or flasher south of the railroad track, which is also located on the easterly side of the highway approximately fifty feet from the intersection of the easterly line of the highway with the westerly rail.  These traffic lights are "flasher" signals, warning of the approach of trains, and operate through a circuit located eighteen hundred feet southeasterly of the crossing which, when passed over by the train, causes the lights to flash continuously until the train has passed over the crossing.  The railroad track is straight for a distance of three hundred ten feet in a southeasterly direction from the crossing, where there is a slight curve to the east.  There is a clear vision for six hundred fifty feet northwesterly in the direction the train was travelling, "straight down the tracks to the crossing." Approaching the crossing from the north and at distances of one hundred, seventy-five, fifty, and twenty-five feet north of the easterly rail, an operator of an automobile has a clear and unobstructed view to his left of approaching trains from the southeast of four hundred, four hundred fifty, six hundred, and six hundred fifty feet respectively. The overhang of the locomotive on each side beyond the rails was eighteen inches.

The engineer of the locomotive was seated on the right-hand side of the cab.  He testified that the speed of his

train, as he was coming to the crossing, was fifteen to eighteen miles an hour, and that, under the weather conditions at the time of the accident, "he could see ahead 'somewhere about 200 feet, probably a little more, but not a great deal'"; that under the same conditions, he could stop his train in about two hundred ten to two hundred fifteen feet "from the point of collision"; that the distance "in which he could stop was the distance in which he did stop"; that the track was covered with snow and he realized "that a motorist coming along down here wouldn't be able to see the rails because of their being covered with snow"; that the locomotive came into collision with the front part of the automobile, "practically a head on collision," and at the time of the collision, the automobile was not on the track; that its wheels, "where they slid in the snow," were about ten to twelve inches from the track.

The law of the place where the injury is received determines whether a right of action exists, and the law of the place where the action is brought regulates the remedy and its incidents, such as pleading, evidence, and practice. *Levy* v. *Steiger*, 233 Mass. 600. *Gannett* v. *Boston & Maine Railroad*, 238 Mass. 125, 129.

The plaintiff's exception to the refusal of the judge to submit additional questions to the jury cannot be sustained. This is a matter wholly within the discretion of the judge. *Boston Dairy Co.* v. *Mulliken*, 175 Mass. 447. *Viaux* v. *John T. Scully Foundation Co.* 247 Mass. 296, 301. *Spurr* v. *Shelburne*, 131 Mass. 429, 430.

The plaintiff concedes that the answer of the jury to the first question disposes of the issue of negligence under the first count of his declaration, but he contends that there were other issues of negligence that should have been submitted to the jury, and that there was error on the part of the trial judge in instructing the jury that the only facts it was to consider on the question of the defendant's negligence were whether the statutory signals were given and whether the speed of the train exceeded twenty miles an hour at the crossing. If the answers to the questions

that were submitted to the jury did not dispose of all the material issues in the case, it was error for the judge to direct a verdict thereon. *Fitzgerald* v. *Young*, 225 Mass. 116, 121, 122, 123. *Stone* v. *Orth Chevrolet Co. Inc.* 284 Mass. 525, 528.

One of the plaintiff's contentions is that the defendant was negligent in failing to protect the crossing by flagmen or gates. Whether the circumstances as to travel upon a highway, the nature of the surroundings as affecting visibility, and other factors require such protection or even more effective warning than the sounding of the whistle and the ringing of the bell presents a question of fact to be solved by the jury from its judgment of reasonable conduct in such circumstances. *Collins* v. *Hustis*, 79 N. H. 446, 449. *Morier* v. *Hines*, 81 N. H. 48, 51. Nevertheless, such a grounding of negligence is not actionable "unless evidence of the causal effect of the careless act or omission to produce the injurious result is shown. If the evidence is conceded to be sufficient to find lack of care in such respect, yet unless the evidence also tends to show the force of the carelessness in producing the injury, the claim must fail . . . ." *Collette* v. *Boston & Maine Railroad*, 83 N. H. 210, 213. Applying these rules of law to the facts in the case at bar, we are of the opinion that the absence of gates or a flagman does not constitute actionable negligence. The plaintiff knew that he was approaching a railroad crossing. The signal light, which was flashing, caused him upon his own admission to know that he was coming to a railroad crossing and that a train was approaching. See *Stearns* v. *Boston & Maine Railroad*, 75 N. H. 40, 49; *Allison* v. *Boston & Maine Railroad*, 88 N. H. 420.

The plaintiff contends that the statute, Pub. Laws of New Hampshire (1926), c. 249, § 30, as amended by St. 1929, c. 181, required the defendant to stop its train at the crossing because of the street railway track.* There

---

* In c. 236 of the Pub. Laws of New Hampshire (1926) was the following section: "Section 3. Railroad. The term railroad shall include every railroad and street railway, by whatever power operated, which is open to public use in the conveyance of persons or property for a compensation, also all bridges, grade crossing, under passes, switches, spurs, tracks, equipment, stations

was no evidence to show that the traffic signal light maintained at the crossing was there without the approval of the public service commission; the plaintiff failed to sustain the burden of proving that the statute applied, and that it was violated. See *Kendall* v. *Jennison*, 119 Mass. 251, 253; *Baxter* v. *Boston & Worcester Railroad*, 102 Mass. 383, 385.

It therefore becomes a question whether the plaintiff was entitled to go to the jury upon the allegations contained in the third count of his declaration. We think that he was.

The general rule, in the absence of statutory requirements and limitations, is that, while the train has the right of way in passing over a grade crossing as against a traveller upon the highway, "Both parties are charged with the mutual duty of keeping a careful lookout for danger; and the degree of diligence to be exercised on either side is such as a prudent man would exercise under the circumstances of the case." *Huntress* v. *Boston & Maine Railroad*, 66 N. H. 185, 188.

The defendant contends that the plaintiff is precluded from recovery by reason of the answer of the jury to the fourth question. At the time of the collision Pub. Laws of New Hampshire (1926), c. 249, § 22, (see St. 1933, c. 15,) was in force and provided as follows: "Automobile Drivers. The person controlling the movement of any self-propelled vehicle upon passing such sign [warning sign required by law to be maintained on highway at grade crossing] shall reduce the speed of such vehicle, so that within a distance of one hundred feet from the nearest rail of such crossing such vehicle shall not proceed at a greater speed than ten miles an hour. Any person violating the provisions of

---

and terminals and other facilities and property of every kind whatever, used, operated or owned by or in connection with any such railroad or railway." In c. 249 as amended by St. 1929, c. 181, was the following: "Section 30. Junction Stops. The engineer of every locomotive drawing a passenger train, when approaching a grade crossing over another railroad at which no signalman is stationed, shall stop his train at least five hundred feet from the crossing, and shall then proceed slowly over the crossing; but one stop shall be sufficient for all such crossings located within six hundred feet of each other upon the same road. The provisions of this section shall not apply to any such crossing which is protected by a signal system approved by the public service commission." — REPORTER.

this section shall be fined not more than fifty dollars, or imprisoned not more than three months, or both." If the violation of this statute by a plaintiff contributes to his injury, it bars his recovery. *Hobbs* v. *Boston & Maine Railroad*, 88 N. H. 112. It is evident from the record that the fourth question was framed by the judge with this statute in mind. It is to be observed that the jury was asked whether the plaintiff proceeded at a rate of less than ten miles per hour, rather than at a "greater speed than ten miles per hour," as is provided in the statute, and further, that the question contains no inquiry, if the statute was violated, whether such violation contributed to the plaintiff's injury. The defendant contends, however, that this question and answer must be read in the light of the judge's instructions to the jury "which [the defendant argues] made it perfectly plain that a negative answer to the fourth question meant that the plaintiff violated the statute." But even if this contention is correct, it does not dispose of the difficulty. Compare *Hobbs* v. *Boston & Maine Railroad*, 88 N. H. 112. The jury was told plainly that, if the plaintiff was proceeding at a rate of speed of more than ten miles an hour over the last one hundred feet of highway, "and that contributed in any way to cause the accident," he could not recover as matter of law, and "In other words, it is negligence, contributory negligence, as matter of law, for a person to do that, so that is the importance of that fourth question." In his discussion of the question of contributory negligence, after stating the general rule, the judge said, "Now, as bearing upon that question of contributory negligence, the fourth question which I have put to you has a bearing." We think that the jury must have clearly understood that a violation of the statute, to be of consequence, must have contributed to the plaintiff's injury, and that a violation of it, so contributing, would amount to contributory negligence. Whether that instruction was right or wrong, it became the law of the trial, and the answers of the jury must be taken as having been made in the light of that instruction. When the jury answered the third question

by declaring that the plaintiff was not guilty of contributory negligence, the answer must be taken as denying as well the existence of contributory violation of law.

The jury found that the rate of speed at which the train was travelling did not exceed twenty miles per hour. Ordinarily such a speed, if not shown to be unusual in any respect, would not raise a question of negligence to be passed upon by the jury. *Morier* v. *Hines*, 81 N. H. 48, 51. *Osgood* v. *Boston & Maine Railroad*, 83 N. H. 262, 270. *Despres* v. *Boston & Maine Railroad*, 87 N. H. 427, 428. But in the case at bar, we think that the speed of the train was a factor to be considered by the jury, together with other evidence, in determining whether there was negligence. A motorist who was travelling behind the plaintiff testified that he saw, "without difficulty," the red light flashing when he was three or four hundred feet back of the crossing, and that he could see an automobile three hundred feet ahead of him. It was for the jury to consider this evidence together with that of the plaintiff, who testified that he could see ahead "perhaps 150 feet," and that of the engineer, who testified that he could see ahead "somewhere about 200 feet, probably a little more, but not a great deal," and it was for the jury to say how far in fact the engineer could see. The engineer knew that the track was covered with snow, and he realized that a motorist would not be able to see the rails because of their being covered with snow. It could have been found that the flasher light on the northerly side of the track was located in such a position as to mislead the plaintiff in respect to the location of the track under the conditions existing on the day of the accident. *Sweeny* v. *Old Colony & Newport Railroad*, 10 Allen, 368, 377. *Jones* v. *New York, New Haven & Hartford Railroad*, 275 Mass. 139, 142. *Pittsfield Cottonwear Manuf. Co.* v. *Pittsfield Shoe Co.* 71 N. H. 522, 533. See Am. Law Inst. Restatement: Torts, § 325 (b). The jury found that the plaintiff was not at fault in being where he was. Upon all the permissible findings, we think that a question was presented for the jury whether negligence of the defendant's engineer caused the plaintiff's in-

jury. *Waldron* v. *Boston. & Maine Railroad*, 71 N. H. 362, 365. *Duggan* v. *Boston & Maine Railroad*, 74 N. H. 250. *Stearns* v. *Boston & Maine Railroad*, 75 N. H. 40, 48. *Chellis Realty Co.* v. *Boston & Maine Railroad*, 79 N. H. 231, 232–233. *Jones* v. *Boston & Maine Railroad*, 83 N. H. 73, 83–85.

In view of this conclusion, it is unnecessary to deal with other exceptions of the plaintiff. At a new trial many of the questions involved may not arise. Both counsel have argued quite fully the issue whether the rule of the last clear chance, as recognized in the State of New Hampshire, applied. If upon a new trial the rule is involved, there should be no difficulty in applying it. See *Tetreault* v. *Gould*, 83 N. H. 99, 101; *Clark* v. *Boston & Maine Railroad*, 87 N. H. 36, 38, 39; *Morris* v. *Boston & Maine Railroad*, 85 N. H. 265, 272.

It follows that the exceptions must be sustained to the ruling of the trial judge that the only issues of negligence were whether the statutory signals were given and whether the speed of the train exceeded twenty miles an hour at the crossing; and that there must be a new trial, limited, however, to the third count.

*So ordered.*